IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION


CHRISTOPHER S. WILLIAMS                                                     PLAINTIFF


v.                               NO. 1:11CV00063 HDY


MICHAEL J. ASTRUE,                                                          DEFENDANT
Commissioner of the Social
Security Administration


MEMORANDUM OPINION AND ORDER

BACKGROUND. Plaintiff Christopher S. Williams ("Williams") commenced the administrative portion of this case in November of 2007 by filing an application for disability insurance benefits pursuant to the provisions of the Social Security Act ("Act"). His application was denied initially and upon reconsideration, after which he requested, and received, a de novo hearing before an Administrative Law Judge ("ALJ"). The ALJ issued a decision adverse to Williams in May of 2010, and he appealed. The Appeals Council denied his request for review, thereby causing the ALJ's decision to become the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Williams then commenced the judicial portion of this case in July of 2011 by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the Commissioner's final decision.

STANDARD OF REVIEW. The sole inquiry for the Court is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. It requires the Court to consider the weight of the evidence in the record and apply a balancing test to evidence which is contrary. See Heino v. Astrue, 578 F.3d 873 (8th Cir. 2009).

THE ALJ'S FINDINGS. The ALJ made findings pursuant to the five step sequential evaluation process. At step one, he found that Williams has not engaged in substantial gainful activity since September 1, 2007, the alleged onset date. At step two, the ALJ found that Williams has the following severe impairments: "degenerative disc disease of the lumbar spine, status-post old pelvis fracture (1994), obesity, depression, post-traumatic stress disorder, and a history of alcohol abuse." See Transcript at 12. At step three, the ALJ found that Williams does not have an impairment or combination of impairments listed in, or equal to one listed in, the governing regulations. The ALJ then assessed Williams' residual functional capacity and found that he is capable of performing light work, "except that [he] requires a sit/stand option and is limited to jobs requiring only incidental contact with the public." See Transcript at 14. At step four, the ALJ found that Williams is unable to perform his past relevant work. At step five, the ALJ found that considering Williams' residual functional capacity, age, education, and work experience in conjunction with the testimony of vocational expert, jobs exist in significant numbers that he can perform. Accordingly, the ALJ concluded that Williams has not been under a disability as defined by the Act from the alleged onset date through the date of the ALJ's decision.

WILLIAMS' ASSERTIONS OF ERROR. Are the ALJ's findings supported by substantial evidence on the record as a whole? Williams thinks not and advances the following two reasons why: 1) his residual functional capacity was not properly assessed, and 2) the ALJ erred at step five.

WILLIAMS' RESIDUAL FUNCTIONAL CAPACITY. Williams first maintains that his residual functional capacity was not properly assessed. He maintains that the opinions of his treating physician, Dr. Lackey Moody ("Moody"), were improperly discounted.

Residual functional capacity is simply an assessment of "the most [the claimant] can do despite [his] limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record and must be supported by "medical evidence that addresses the claimant's ability to function in the workplace." See Id. at 539. The ALJ is obligated to consider the opinions of treating physicians and give them controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with the other substantial evidence. See Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006) (internal quotations omitted).

The ALJ found that Williams is capable of performing light work, except that he requires a sit/stand option and is limited to jobs requiring only incidental contact with the public. In so finding, the ALJ considered, inter alia, Moody's opinions in a May 15, 2008, medical source statement, see Transcript at 421-424, and in a February 24, 2010, letter, see Transcript at 430. As to those opinions, the ALJ found the following:

> I have considered the medical source statement dated May 15, 2008 by Lackey Moody, M.D., the claimant's treating physician, in which Dr. Moody opined that the claimant was able to lift less than 10 pounds frequently and 10 pounds occasionally and stand and/or walk less than two hours total in an eight-hour workday. In addition, Dr. Moody was of the opinion that the claimant could sit less than six hours total in an eight-hour workday. In addition, he was limited in his abilities to push and pull with his upper and lower extremities. Dr. Moody was also of the opinion that the claimant could never climb ramps, stairs, ladders, ropes, and scaffolds, kneel, crouch, crawl, or stoop but that he could do occasional reaching, handling, fingering, and feeling but that he had no limitation on seeing, hearing, and speaking (Exhibit 8-F). I give Dr. Moody's evaluation little weight, since it is conclusory and not supported by objective medical findings. Although he mentions medical records, x-rays, and a specialist evaluation that allegedly support his conclusions, he does not spell out any specific findings contained in these reports. Although his earlier progress note pointed out that the claimant had low back pain, a fractured pelvis, residuals from a motor vehicle accident in 1994, and chronic pain syndrome (Exhibit 6-F, p. 14), there are no objective findings, such as neurological findings, that would support the above limitations. In fact, Dr. Moody noted that the claimant's neurological examination was normal (Exhibit 6-F, p. 14).
>
> I have also considered Dr. Moody's February 24, 2010 letter in which he opined that the claimant's diagnosis and current medication schedule made it impossible for him to be gainfully employed (Exhibit 11-F, p.1). I also give Dr. Moody's opinion in this letter little weight because it is brief, conclusory, and unsupported by objective medical evidence (Exhibit 11-F, p.1). Although Dr. Moody mentions diagnoses consisting of post-traumatic stress disorder with traumatic brain injury, L5-S1 radiculopathy, bulging nucleus pulposus, degenerative joint disease of both hips and knees, and a history of alcohol abuse, his letter contains no specific objective medical findings to support his conclusion. Although Dr. Moody attached his February 19, 2010 office notes, these notes show a negative straight-leg raising test; normal sensory, reflect, and motor functions; and a normal neurological examination despite his diagnosis of L5-S1 radiculopathy (Exhibit 11-F, p.3).

See Transcript at 16.

Substantial evidence on the record as a whole supports the ALJ's assessment of William's residual functional capacity. The ALJ properly considered all of the relevant evidence in the record, both medical and non-medical, and incorporated the restrictions arising from Williams' credible impairments and credible subjective complaints into the assessment of his residual functional capacity. The ALJ considered but could and did properly discount the opinions offered by Moody in his May 15, 2008, medical source statement and in his February 24, 2010, letter.

The record reflects that Moody began seeing Williams in November of 2007 for injuries he sustained in an automobile accident. The Commissioner maintains that Moody treated Williams "conservatively for right shoulder and back pain with medication and physical therapy," see Document 20 at 5, an assertion the record supports, see Document 404-419. By January of 2008, William reported that although he continued to experience pain in his shoulder and back, physical therapy was helping. See Transcript at 411. When physical therapy was discontinued later that month, Angela Reed ("Reed"), a physical therapist, noted the following:

> Physical Therapy Comments: [Williams] has reached the maximal level of function and benefit of therapy.
>
> ...
>
> Additional Comments: [Williams] has progressed well with decreased pain and spasm and improved mobility and strength of CT back. He understands and demonstrates his HEP well and I have encouraged him to continue daily.

See Transcript 419. Four months later, Moody prepared a medical source statement in which he opined that Williams is quite restricted in his ability to perform work-related activities. See Transcript at 421-424.[1] Moody noted that his opinions were supported by "medical records, x-rays, [and] [a] specialist evaluation." See Transcript at 422.

The ALJ could and did properly discount Moody's opinions in the medical source statement. They are indeed conclusory and supported by no objective medical findings. Although he cited medical records, x-rays, and a specialist evaluation as supporting his opinions, he failed to specifically identify the records, reports, and specialist evaluation supporting his opinions. Williams has not identified any such record, report, or evaluation. Moreover, Moody's opinions are inconsistent with his own notes and those made by Reed. Their notes reflect that Williams' condition improved over time with medication and physical therapy, and the notes make no mention of a severe restriction in his ability to perform work-related activities.

The Commissioner maintains that "[t]here is no record of [Williams] seeking any further medical treatment until twenty months later ...," see Document 20 at 5, an assertion the record supports. It was not until September of 2009 that he sought treatment from another medical provider for pain in his hips and knees and for symptoms related to post-traumatic stress disorder. See Transcript at 433-438.

---

[1] Moody opined, inter alia, that Williams can occasionally lift or carry ten pounds; can frequently lift or carry less than ten pounds; can stand and/or walk less than two hours in an eight hour workday; can sit less than six hours in an eight hour workday; can never climb, kneel, crouch, crawl, and stoop; and can occasionally reach in all directions, handle, finger, and feel.

Moody did not see Williams again until February of 2010 when he presented complaining of pain in his back, hips, and knees. See Transcript at 431-432. Moody's specific findings are largely unremarkable as he found, inter alia, that Williams' motor functions were normal. On the heels of Williams' visit, Moody authored a letter in which he made the following representations:

> … [Williams] was examined in my office on February 19, 2010. [He] suffers from Post Traumatic Stress Disorder with Traumatic Brain Injury, L5 S1 Radiculopathy, Bulging Nucleus Pulposis, Degenerative Joint Disease both hips and knees, history of Alcohol Abuse. … [His] diagnosis and current medication schedule makes it impossible for him to be gainfully employed.
>
> [Williams'] current lab and x-rays are at the VA. I have enclosed a copy of [his] February 19, 2010 office notes.

See Transcript at 430.

The ALJ could and did properly discount Moody's opinions in his February 24, 2010, letter. They too are conclusory and supported by no objective medical findings. Although he mentions lab reports and x-rays, he failed to specifically identify the reports and x-rays supporting his opinions. Williams has not identified any such report or x-ray. Moody's opinions are also inconsistent with his earlier notes and those made by Reed. In addition, Moody offered his February of 2010 opinion of Williams after only one examination and after not seeing him for approximately twenty months. Last, the ultimate question of whether a claimant can work is for the ALJ, not a medical provider. See Qualls v. Apfel, 158 F.3d 425 (8th Cir. 1998).

The opinion of a treating physician cannot, and should not, be disregarded lightly because he has a "longitudinal picture of [the] impairment." See Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). In this instance, however, substantial evidence on the record as a whole supports the ALJ's treatment of Moody's opinions, that is, the ALJ could and did properly discount them.

STEP FIVE. Williams next maintains that the ALJ erred at step five. Williams' assertion of error is as follows: 1) the ALJ assessed Williams' residual functional capacity and found that he is limited to, inter alia, jobs requiring only incidental contact with the public; 2) the ALJ posed a question to the vocational expert in which the ALJ identified a hypothetical individual with Williams' residual functional capacity and inquired into whether there are jobs the hypothetical individual can perform; 3) the vocational expert testified that the hypothetical individual can perform the jobs of cashier II and order clerk; but 4) the vocational expert's testimony was inconsistent with the Dictionary of Occupational Titles ("DOT") and Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO") as they provide that the jobs require "frequent, purposeful contact with the public." See Document 19 at 7.

The DOT contains generic job descriptions that offer "the approximate maximum requirements for each position, rather than their range." See Page v. Astrue, 484 F.3d 1040, 1045 (8th Cir. 2007) (internal quotation omitted). When vocational expert testimony conflicts with the DOT, though, the DOT controls unless rebutted. See Jones v. Astrue, 619 F.3d 963 (8th Cir. 2010).

The ALJ indeed found that Williams is limited to, <u>inter alia</u>, jobs requiring only incidental contact with the public. The vocational expert testified that a hypothetical individual with Williams' residual functional capacity can perform the jobs of cashier II, DOT number 211.462-010, and order clerk, DOT number 209.567-014. The ALJ found that pursuant to Social Security Ruling 00-4p, the vocational expert's testimony was "consistent with the information contained in the [DOT]," <u>see</u> Transcript at 20, and concluded that there are jobs Williams can perform.

Substantial evidence on the record as a whole supports the ALJ's finding at step five. The ALJ could and did properly find that Williams is limited to, <u>inter alia</u>, jobs requiring only incidental contact with the public. The vocational expert's testimony goes to the quantity or frequency of contact the hypothetical individual can have with the public. The SCO pertaining to cashier II provides that it requires, in part, "dealing tactfully and courteously with [the] public," <u>see</u> SCO, Part A, 07.03 Financial Detail, page 333, and the SCO pertaining to order clerk provides that it requires, in part, "being tactful and courteous when receiving callers or interviewing people," <u>see</u> SCO, Part A, 07.04 Oral Communication, page 335. The aforementioned requirements go to the quality or character of contact the jobs require; they say nothing about the quantity or frequency of contact the hypothetical individual can have with the public. The vocational expert did not testify to the former; he only testified regarding the latter. Consequently, Williams has not demonstrated that there is a conflict between the vocational expert's testimony and the DOT.

CONCLUSION. There is substantial evidence on the record as a whole to support the ALJ's findings. Accordingly, Williams' complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this ___4___ day of April, 2012.

 

_____
UNITED STATES MAGISTRATE JUDGE